UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CYRIL DANIELS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF DETROIT, et al.,<br><br>    Defendants. | Case No. 24-cv-11956<br><br>Honorable Robert J. White |

**ORDER GRANTING DEFENDANT KAIRY ROBERTS' MOTION TO SET ASIDE ENTRY OF DEFAULT (ECF No. 45)**

On an early August morning, a few hours past midnight, a violent brawl allegedly broke out between Detroit police officers and patrons exiting a local watering hole. (ECF No. 1, PageID.6–8). Two of those patrons, Cyril Daniels and Joshua Hurd, reportedly suffered significant injuries at the hands of officers. (*Id.*). To treat the severe and persistent pain from his injuries, Hurd turned to black market drugs and thereafter overdosed. (*Id.* at PageID.8–9). Hurd died as a result of the complications from his overdose. (*Id.* at PageID.9).

Following the fallout from the fight, Plaintiffs Daniels and Shilika Hurd, as the Personal Representative of the Estate of Joshua Hurd, sued the City of Detroit and thirteen Detroit Police Department (DPD) officers and sergeants. (*Id.* at PageID.1). Kairy Roberts is among the named DPD officers. (*Id.* at PageID.4).

Presently before the Court is Roberts' motion to set aside the entry of default against him. (ECF No. 45).

## I. Background

Plaintiffs filed their complaint on July 29, 2024. (ECF No. 1). Over the course of the next five months, Plaintiffs' process server attempted to serve Roberts at his presumed address on three separate occasions. (ECF No. 46-1, PageID.537). Plaintiffs also tried to serve Roberts via certified mail to the same address, without success. (ECF No. 46-2, PageID.539–46). Finding their efforts unfruitful, Plaintiffs moved for alternate service. (ECF No. 21). The Court granted the motion and approved service by (1) "[t]acking the Summons and Complaint . . . to the door of" Roberts' residence and (2) mailing the Summons and Complaint to Roberts' residence by First Class Mail. (ECF No. 28, PageID.370–71). On January 23, 2025, Plaintiffs reported serving Roberts through the court-approved alternate channels. (ECF No. 32). On April 4, 2025, after no response from Roberts, Plaintiffs moved for entry of default, (ECF No. 41). The Clerk of Court entered the default against Roberts on April 7, 2025. (ECF No. 42).

About a month later, Roberts allegedly received notice of the lawsuit, and within a week requested representation and indemnification from the City of Detroit Law Department (CDLD). (ECF No. 45, PageID.506; ECF No. 45-5, PageID.519). The present motion followed shortly thereafter. (ECF No. 45). In his motion,

2

Roberts argued that good cause exists to set aside the default. (*Id.* at PageID.509). That is, at some point before Plaintiffs attempted service, Roberts moved from his presumed address and left DPD. (*Id.* at PageID.506). These actions, and not any purposeful evasion on his part, ultimately delayed his notice of the lawsuit. (*Id.* at PageID.510). The lack of prejudice to Plaintiffs in setting aside the default, in addition to Roberts' meritorious defenses, also weigh in favor of granting his motion. (*Id.* at PageID.510–11). Plaintiffs asked the Court to deny the motion. (ECF No. 46, PageID.524). But in the event the Court granted the motion, Plaintiffs requested costs and attorney's fees for the work associated with the default. (*Id.* at PageID.532–34).

## II.  Legal Standard

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." When a party moves to set aside a default under Rule 55(c), courts consider the following three factors to determine the outcome. *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 192 (6th Cir. 1986). First, "[w]hether the plaintiff will be prejudiced" by setting aside the default. *Id.* Second, "[w]hether the defendant has a meritorious defense." *Id.* And third, "[w]hether culpable conduct of the defendant led to the default." *Id.* If the first two factors support setting aside a default, "it is an abuse of discretion for a district court

3

to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *Id.* at 194.

Although "Rule 55(c) leaves to the discretion of the trial judge the decision whether to set aside an entry of default," *id.* at 193, "[t]rials on the merits are favored in the federal courts," *see Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990). As a result, "a glaring abuse of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." *Berthelsen*, 907 F.2d at 620 (citation omitted) (citation modified).

### III. Analysis

The Court finds that good cause exists to set aside the motion for default. Beyond the delay, there is no apparent prejudice to Plaintiffs in granting the motion. Likewise, Roberts offered meritorious defenses and a sufficient explanation for his tardiness in responding to the complaint. Plaintiffs' arguments to the contrary are unavailing. In granting the motion, the Court will not award costs or attorney's fees.

#### A. Good Cause Exists to Set Aside the Default.

The Court will address each factor relevant to the good cause analysis in turn. Overall, the Court finds the factors weigh in favor of granting the motion.

##### 1. Prejudice

Mere delay is not sufficiently prejudicial "to require denial of a motion to set aside a default judgment." *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*,

4

705 F.2d 839 (6th Cir. 1983); *see also Krowtoh II LLC V. ExCelsius Int'l Ltd.*, 330 Fed. App'x 530, 535 (6th Cir. 2009). "'Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion.'" *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)) (citation modified). Plaintiff claimed that setting aside the default "will provide [Roberts] greater opportunity . . . [to] collude with the other Defendants in his defense." (ECF No. 46, PageID.530). Namely, Roberts can rely on Plaintiffs' written discovery responses to tailor his answer. (*Id.* at PageID.531).

The Court is not persuaded by Plaintiffs' argument. To start, all Defendants are represented by the same counsel. Any collusion, then, seems the natural result of shared representation. And such shared representation is common when defendants consist of local government actors.

And even if Roberts can access already produced discovery, the purpose of the answer is limited to stating defenses and admitting or denying allegations contained in the complaint. *See* Fed. R. Civ. Pro. 8(b)(1)(A)–(B). It is thus not clear what significant tactical advantage Roberts' access to discovery provides for drafting an answer. Without more, the Court cannot infer that the level of prejudice needed to overcome Roberts' ability to defend his case on the merits is present. This is especially true given that discovery had only just begun when Roberts moved to set

5

aside default. (ECF No. 45, PageID.510–11). As a result, the Court finds this factor weighs in favor of Roberts.

### 2. Meritorious Defense

A meritorious defense is one good at law. *See Berthelsen*, 907 F.2d at 622; *see also United Coin*, 705 F.2d at 845 ("[I]f any defense relied upon states a defense good at law, then a meritorious defense has been advanced."). The "key consideration" in deciding if a defense is meritorious is "to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 399 (6th Cir. 1987) (citation omitted). As part of its analysis, the Court will "resolve all ambiguous or disputed facts in the light most favorable to the defendant." *Berthelsen*, 907 F.2d at 621.

Here, Roberts claimed that Plaintiffs did not allege any specific facts to establish his liability. (ECF No. 45, PageID.511). And based on his body camera footage, any use of force attributable to him was made upon a non-party to the lawsuit. (*Id.*). Because the facts suggest that Roberts did not attack Plaintiffs, the Court finds there is some possibility that Roberts would not be held liable on the excessive force claim. Although Plaintiffs argued that Roberts could still be liable for failure to intervene, (ECF No. 46, PageID.530–31), all Roberts needed to show was "one defense that presents some possibility of a different outcome." *Dassault*

6

*Systemes, SA v. Childress*, 663 F.3d 832, 844 (6th Cir. 2011) (citation omitted). Given that his defense to the excessive force claim may absolve him of liability, Roberts satisfied this burden, and this factor supports his motion.

### 3. Culpable Conduct

"[F]or a defendant's actions to constitute culpable conduct, the 'defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings,' rather than negligent conduct." *Krowtoh*, 330 Fed. App'x at 536 (quoting *Shepard*, 796 F.2d at 194). Because the first two factors weigh in favor of setting aside default, however, the Court will only consider whether Roberts willfully failed to appear and plead. *Shepard*, 796 F.2d at 194; *see also United States v. $22,050.00 in U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010).

Roberts left DPD and moved addresses at some point prior to Plaintiffs' attempt to effect service. (ECF No. 45, PageID.505–06). As a result, Plaintiffs' numerous attempts to serve Roberts at his former address were unsuccessful. (ECF No. 46-1, PageID.537; ECF No. 46-2, PageID.539–46). The Clerk of Court ultimately granted default against Roberts after Plaintiffs' alternative service methods also failed. (ECF No. 42). By that time, about eight months had passed since Plaintiffs initiated the lawsuit.

At some point in early May 2025, Roberts received notice of the lawsuit. (ECF No. 45, PageID.506). Roberts promptly appeared at CDLD to request representation and indemnification and filed the present motion. (*Id.* at PageID.506–07). Plaintiffs claimed that Roberts had notice of the lawsuit longer than he let on in his motion. (ECF No. 46, PageID.532). But as of April 2025, the attorney at CDLD still was unable to produce a valid address for Roberts. (ECF No. 45-4, PageID.517). Plaintiffs attempted to contradict this evidence by arguing that Roberts is currently represented by CDLD in a separate case, and therefore CDLD should have his contact information including his address. (ECF No. 46, PageID.532). That representation is inaccurate. As of October 21, 2024, CDLD no longer represented Roberts in that case, (ECF No. 47-2), so it is reasonable to believe that CDLD did not know his current address as of April 2025.

The Court finds the facts presented insufficient to establish that Roberts willfully avoided notice of the lawsuit. Instead, it appears that Roberts' address change and departure from DPD caused the logistical challenges and therefore the delay in notice. And regardless, even if Roberts acted willfully in evading service, the Court may still grant his motion. *See Berthelsen*, 907 F.2d at 622 (finding the existence of a meritorious defense and lack of prejudice outweighed defendant's evasion of service). The Court will therefore grant Roberts' motion.

8

### B. Plaintiffs' Case Law is Distinguishable.

Plaintiffs cited several out-of-circuit cases as analogous and thereby requiring denial of Roberts' motion. (ECF No. 46, PageID.529–30). But the Court is not obligated to follow out-of-circuit decisions. And after review, the Court finds they are also devoid of persuasive value. Unlike here, the moving parties in Plaintiffs' cited cases engaged in flagrantly culpable conduct or presented deficient arguments to set aside default. That is, the moving parties fabricated explanations about why they could not file an answer, *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 15 (1st Cir. 2003), failed to address all factors of the good cause elements in the motion to set aside default judgment, *Trs. of Constr. Indus. Welfare Fund of Cent. Ill. v. Radwin Concrete Constr., Inc.*, 237 F.R.D. 414, 415 (C.D. Ill. 2006), and repeatedly and inexcusably delayed responding to pleadings and even the subsequent default despite proper service, *Rodriguez Fernandez v. Urb. Transit. Sols., Inc.*, 230 F.R.D. 273, 275–76 (D.P.R. 2005).

Roberts, however, obtained counsel promptly after discovering the lawsuit and moved quickly to set aside the default. There is no evidence to suggest Roberts lied about why he was unaware of the complaint for so long; in fact, Plaintiffs' own process server reported multiple times that Roberts' presumed address was clearly vacant and for sale. (ECF No. 46-1, PageID.537). Finally, Roberts argued sufficiently all good cause factors in his motion.

### C. The Court Will Not Award Costs or Attorney's Fees.

Courts may assess or determine "some appropriate penalty or sanction" against the moving party based on the default. *Shepard*, 796 F.2d at 195. That is, "[t]he court's inherent power and use of discretion [] enables it to set aside default entries on various conditions." 10 *Wright & Miller's Federal Practice & Procedure*, § 2700 (4th ed. 2008). Many district courts within the Sixth Circuit have awarded attorney's fees for the motion practice associated with the default. *See Guyout v. Ramsey*, No. 14-13541, 2015 WL 871081, at *5 (E.D. Mich. Feb. 27, 2015) (awarding attorney's fees given the defendants' careless conduct and the considerable delay it caused); *Winslow v. Kalamazoo Pub. Schs.*, No. 1:07-cv-65, 2007 WL 1701796, at *2 (W.D. Mich. June 11, 2007) (finding the plaintiff "should not be forced to bear the expenses that accrued from Defendants' failure to have an established process for handling the response to a lawsuit"); *Matney v. Tedesco Bldg. Servs., Inc.*, No. 2:05-cv-70104, Dkt. No. 18, PageID.120 (E.D. Mich. June 21, 2005) (awarding attorney's fees based on the "ample evidence of a failure to cooperate and be available for service").

The Court will decline to do so here. The type of conduct found worthy of an award of attorney's fees in the cases referenced above is not present here. The Court will not punish Roberts for his decision to move or leave DPD. Plaintiffs did not present evidence of a failure to litigate on Roberts' part after he received notice.

Instead, once notified, Roberts acted quickly to obtain counsel and file the present motion. Thus, Plaintiffs' request for attorney's fees is denied.

* * *

For the reasons given, the Court **ORDERS** that the motion to set aside entry of default against Defendant Kairy Roberts (ECF No. 45) is **GRANTED**.

The Court **FURTHER ORDERS** that the Clerk of Court is directed to set aside the entry of default against Defendant Kairy Roberts (ECF No. 42).

Dated: December 5, 2025                             s/Robert J. White
                                                    Robert J. White
                                                    United States District Judge